UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LAURA E. PATRICK,

        Plaintiff,

v.                   **DECISION AND ORDER**
                       17-CV-896S
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

    1.  Plaintiff Laura E. Patrick challenges the determination of an Administrative Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since September 2, 2013,[1] due to bipolar disorder, manic depressive disorder, post-traumatic stress disorder, an eating disorder, and incidents of self-harm. Plaintiff contends that her impairments render her unable to work, and thus, she is entitled to disability benefits under the Act.

    2.  Plaintiff filed an application for disability insurance benefits on September 2, 2013, which the Commissioner denied on November 13, 2013. Plaintiff thereafter requested a hearing before an ALJ. On March 30, 2016, ALJ Robert T. Harvey held a hearing in Buffalo, New York, at which Plaintiff appeared with counsel and testified. A vocational expert also appeared and testified. After considering the case *de novo*, the ALJ denied Plaintiff's application for benefits in a written decision on June 23, 2016. The

---

[1] Initially, Plaintiff listed her disability onset date as August 10, 2009, but later amended that to September 2, 2013 in her brief to the ALJ prior to the merits hearing.

Appeals Council denied Plaintiff's request for review on July 7, 2017. Plaintiff filed the instant action on September 11, 2017, challenging the Commissioner's final decision.[2]

       3.      On July 23, 2018, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 14). On September 20, 2018, the Commissioner filed a Motion for Judgment on the Pleadings. (Docket No. 18). Plaintiff filed a reply on October 12, 2018 (Docket No. 19), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is granted, Defendant's motion is denied, and this case will be remanded.

       4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[2] The ALJ's June 23, 2016, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

5. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant

> has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since August 10, 2009,[3] the alleged onset date (R. at 12);[4] (2) Plaintiff's bipolar disorder and post-traumatic stress disorder are severe impairments within the meaning of the Act (R.

---

[3] As discussed previously, Plaintiff amended her onset date to September 2, 2013. Because this discrepancy does not alter the Court's decision to remand, it will not be addressed further.
[4] Citations to the underlying administrative record are designated as "R."

4

at 12); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 13); (4) Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with certain non-exertional limitations[5] (R. at 14); (5) Plaintiff has no past relevant work (R. at 19); (6) Plaintiff could perform jobs that exist in significant number in the national economy (R. at 19). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act during the relevant period. (R. at 20).

10. "The scope of review of a disability determination involves two levels of inquiry." Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [Social Security Administration ("SSA")] applied the correct legal principles in making the determination." Id. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" Johnson, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197,

---

[5] The ALJ found the following non-exertional limitations: cannot work in area with unprotected heights, cannot work around heavy, moving or dangerous machinery, no climbing ropes, ladders, or scaffolds, has occasional limitations in the ability to understand/remember and carry out detailed instructions, has occasional limitations in the ability to maintain attention and concentration for extended period, has occasional limitations in the ability to interact appropriately with the general public, has occasional limitations in dealing with stress, and has occasional limits in the ability to make decisions. (R. at 14).

229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." Johnson, 817 F.2d at 986.

11. Plaintiff challenges the ALJ's handling of the joint opinion of Dr. Mark Fisher, her treating psychiatrist, and Licensed Mental Health Counselor ("LMHC") Tiffany Montemage. (Docket No. 14-1 at 21-26). Having reviewed the ALJ's decision in light of Plaintiff's arguments, the Court finds reversible error.

12. "Social Security Administration regulations, as well as [Second Circuit] precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." Estrella v. Berryhill, ---F.3d---, ---, 2019 WL 2273574, at *2 (2d Cir. 2019) (emphasis added).

13. "First, the ALJ must decide whether the opinion is entitled to controlling weight." Id. "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."'" Id. (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) and 20 C.F.R. § 404.1527(d)(2)).

14. "Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. In doing so, it must 'explicitly consider' the following, nonexclusive 'Burgess factors': '(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the

6

opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" Id. (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) and citing Burgess, 537 F.3d at 129; 20 C.F.R. § 404.1527(c)(2)).

15. "At both steps, the ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion." Id. (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). "An ALJ's failure to 'explicitly' apply the Burgess factors when assigning weight at step two is a procedural error." Id. at *3 (quoting Selian, 708 F.3d at 419-20). "If 'the Commissioner has not [otherwise] provided "good reasons" [for its weight assignment],' [the Court is] unable to conclude that the error was harmless and consequently remand for the ALJ to 'comprehensively set forth [its] reasons.'" Id. (quoting Halloran, 362 F.3d at 33). "If, however, a 'searching review of the record' assures [the Court] 'that the substance of the treating physician rule was not traversed,' [the Court] will affirm." Id. (quoting Halloran, 362 F.3d at 33).

16. Here, the ALJ faltered at both steps of this analysis. To begin, nowhere in his opinion does the ALJ determine whether Dr. Fisher's opinion is entitled to controlling weight. Id. at *3 ("First, the ALJ must decide whether the opinion is entitled to controlling weight.") (emphasis added). The ALJ therefore erred at step one.

17. Step two requires the ALJ to determine how much weight to afford Dr. Fischer's opinion by explicitly considering the Burgess factors. See id. Here, the ALJ assigned "little weight" to Dr. Fisher's opinion which included treating counselor Montemage's assertions of the claimant's inability to meet competitive standards in

7

multiple mental abilities and aptitudes to perform unskilled work "because of the relatively high GAF score assigned, and the conflicting evidence that disclosed multiple mental health examinations within normal limits." (R. at 16). The ALJ provided no additional reasoning. "It thus failed to 'explicitly consider' the first Burgess factor—'the frequen[cy], length, nature, and extent of [Dr. Fisher's] treatment'—before weighing the value of the opinion." Estrella, 2019 WL 2273574, at *3 (citing Selian, 708 F.3d at 418).

18. Although "[a]n ALJ's failure to 'explicitly' apply the Burgess factors when assigning weight at step two is a procedural error" requiring remand, id., the Court's inquiry does not end there. Before remanding, the Court conducts "a searching review of the record" to assure itself "that the substance of the treating physician rule was not traversed." Halloran, 362 F.3d at 33. In other words, the Court must look to "whether the record otherwise provides 'good reasons' for assigning 'little weight' to" the treating physician's opinion. Estrella, --F.3d at--, 2019 WL 2273574, at *3 (quoting Halloran, 362 F.3d at 32). Having reviewed the record, the Court concludes that it does not.

19. First, a review of the Mental Residual Functional Capacity Questionnaire dated March 12, 2015 (when LMHC Montemage evaluated Plaintiff) and March 17, 2015 (when Dr. Fisher signed off on the evaluation) reflects far more serious impairments than the ALJ's opinion suggests (R. 395-400). It states that Plaintiff was treated beginning on May 9, 2014 and was seen weekly for individual counseling sessions and that she was required to attend two group sessions per week. (R. at 395). Based on examination of Plaintiff's mental status, Dr. Fischer concluded that Plaintiff has "cognition impairment of attention/concentration, [and a] preoccupation or obsession with thinking at times." (R.

8

at 395). Dr. Fisher also concluded that while medications help, he has "not noticed much change since [Plaintiff] start[ed] [his] program in May 2014." (R. at 395).

20. Dr. Fisher drew the following conclusions with respect to an assessment of Plaintiff's ability to do work-related activities on a day-to-day basis in a regular work setting: (1) Plaintiff is "unable to meet competitive standards" (one step shy of "no useful ability to function") when it comes to "maintain[ing] regular attendance and be[ing] punctual within customary, usually strict tolerances"; "work[ing] in coordination with or proximity to others without being unduly distracted"; "complet[ing] a normal workday and workweek without interruptions from psychologically based symptoms"; "accept[ing] instructions and respond[ing] appropriately to criticism from supervisors"; "get[ting] along with co-workers or peers without unduly directing them or exhibiting behavioral extremes"; "respond[ing] appropriately to changes in a routine work setting"; and "deal[ing] with normal work stress"; and (2) Plaintiff is "seriously limited but not precluded" in "understand[ing] and remember[ing] very short and simple instructions"; "maintain[ing] attention for two-hour segment[s]"; and "sustain[ing] an ordinary routine without special supervision." (R. at 397). The assessment also concluded that Plaintiff's impairments or treatment would result in Plaintiff's absence from work "about three days per month." (R. at 399).

21. In assigning "little weight" to this assessment, the ALJ did not discuss any of Dr. Fisher's and Ms. Montemage's above findings. Instead, the ALJ simply concluded that Plaintiff's Global Assessment of Functioning ("GAF") score of 65 was "relatively high" and "reflects [Plaintiff's] overall improvement with treatment." (R. at 16). In <u>Estrella</u>, the Second Circuit reiterated the Social Security Administration's cautioning against relying

on GAF scores because "'it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.'"  Estrella, ---F.3d---, 2019 WL 2273574, at *4 (quoting U.S. Soc. Sec. Admin., Office of Disability Programs, AM-13066, Global Assessment of Functioning (GAF) Evidence in Disability Adjudication (Oct. 14, 2014)).

22. In addition to his stated reliance on the "relatively high GAF score," the ALJ concluded that Dr. Fisher's and Ms. Montemage's evaluation deserved "little weight" for a second reason: it conflicted with other record evidence disclosing "multiple mental health examinations within normal limits."  (R. at 16).  That evidence included examinations from physicians whose opinions are not otherwise discussed in the ALJ's decision, and reflect Plaintiff's conditions as varying (R. at 409-10), for example, that Plaintiff's mood and symptoms fluctuate "dramatically" (R. at 412-13), among other things. See, e.g., (R. at 404-05) (October 2015 evaluation reflecting that Plaintiff has high energy levels, "presents mildly manic"); (R. at 421-22) (September 2014 evaluation reflecting substantial improvement in mood and stability).  As the Second Circuit observed in Estrella, an ALJ's failure to attempt to reconcile or grapple with "apparent longitudinal inconsistencies" in a Plaintiff's mental health "is of heightened importance" in the context of impairments of mental health.  Estrella, ---F.3d---, 2019 WL 2273574, at *4; Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

23. The other medical evidence of record that the ALJ concluded conflicted with Dr. Fisher's and Ms. Montemage's evaluation was the psychiatric consultative evaluation of Dr. Susan Santarpia, whose opinion the ALJ afforded "great weight." (R. at 16-17). Dr. Santarpia's one-time evaluation concluded that Plaintiff's symptoms "appear to be consistent with psychiatric [sic] and history of substance abuse problems"; but she concluded that standing alone, Plaintiff's symptoms "do[] not appear to be significant enough to interfere with [Plaintiff's] ability to function on a daily basis." (R. at 476). The Second Circuit has long cautioned against heavy reliance on the findings of "consultative physicians after a single examination," Selian, 708 F.3d at 419, a caution that becomes amplified "in the context of mental illness where, as discussed above, a one-time snapshot of a [Plaintiff's] status may not be indicative of her longitudinal mental health," Estrella, ---F.3d---, 2019 WL 2273574, at *5.

24. Because "'a searching review of the record'" has not "assure[d]" the Court "'that the substance of the treating physician rule was not traversed,'" id. at *3 (quoting Halloran, 362 F.3d at 32), the Court must remand to the ALJ for reconsideration of Patrick's claims consistent with the procedural mandates of the SSA and the Second Circuit. Plaintiff's brief identifies a number of other challenges to the ALJ's determination, (see Docket No. 14-1), but the Court need not address them at this time. Because Patrick's "case must return to the agency either way for the reasons already given, the Commissioner will have the opportunity on remand to obviate th[ese] dispute[s] altogether by" addressing these arguments on remand. Lockwood v. Comm'r of Soc. Sec. Admin., 914 F.3d 87, 94 (2d Cir. 2019).

25. After carefully examining the administrative record, for all of the above reasons, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision. Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 18) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:    June 12, 2019
            Buffalo, New York

                                                /s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                United States District Judge